218 N.J. Super. 63 (1987)
526 A.2d 1119
JOAN C. MCLAUGHLIN, PLAINTIFF-RESPONDENT,
v.
WEICHERT CO. REALTORS, A NEW JERSEY CORPORATION, DEFENDANT-APPELLANT, AND JOHN LASKI AND BARBARA LASKI, H/W, NORTHWEST BERGEN BOARD OF REALTORS, INC., A NEW JERSEY CORPORATION AND RICHARD L. SCHLOTT REALTOR, A NEW JERSEY CORPORATION, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Submitted May 19, 1987.
Decided June 4, 1987.
*65 Before Judges PRESSLER, GAULKIN and BAIME.
Broderick, Newmark, Grather & Aspero, for appellant (Martin A. Newmark and Alan J. Baldwin, on the brief).
John D. Morrison, for respondent.
The opinion of the court was delivered by GAULKIN, J.A.D.
Defendant Weichert Co. Realtors (Weichert) appeals from a final judgment entered upon a jury verdict awarding $3720 to plaintiff Joan C. McLaughlin (McLaughlin).[1]
Both McLaughlin and Weichert are real estate brokers. McLaughlin's claims were based on her proofs that she had showed John and Barbara Laski a house in Ringwood listed by the Northwest Bergen Board of Realtors (Board) multiple listing service, that she was prepared to make a purchase offer on the Laskis' behalf and had attempted to communicate with them to that end, but that the Laskis negotiated and consummated the purchase of the house through Weichert as broker. The trial judge framed two causes of action for the jury: first, a breach of contract claim arising out of Weichert's alleged violation of Board rules and regulations; second, a claim that Weichert tortiously interfered with McLaughlin's prospective economic or business advantage. The judge instructed the jury that in each cause of action McLaughlin sought the $3720 *66 commission received by Weichert as selling broker on the sale.[2] On the breach of contract claim, the judge further instructed that under the Board rules and regulations, McLaughlin might be found "entitled to a portion" of the Weichert commission. The jury was not asked to return separate verdicts on each of the causes of action and, in returning its $3720 award, it did not say whether it found a breach of contract, tortious interference, or both.
We find no merit in Weichert's contention that the trial judge erred in admitting into evidence the Board rules and regulations. The argument that McLaughlin had failed to cite the rules and regulations in her answers to interrogatories is unpersuasive; as the trial judge found in rejecting the argument, Weichert's interrogatories did not invite any such citation. Nor do we find any merit in Weichert's argument that the rules and regulations were irrelevant because only its principal, James Weichert, was a member of the Board. To be sure, membership in the Board is limited to individuals. But the corporation could only lawfully conduct business through licensed individuals (N.J.S.A. 45:15-9); at least in the absence of any contrary showing it is both fair and reasonable to infer that James Weichert intended his Board membership, and particularly his access to its multiple listing service, to inure to the benefit of the corporation.[3] The trial judge thus was correct in holding that the corporation was subject to Board rules. The jury was permitted to make its own evaluation of all the proofs bearing on Weichert's role and obligations with respect to the Ringwood listing, including Weichert's proofs that its sale to the Laskis was not through the Board listing at all, but rather *67 through the Northern New Jersey Multiple Listing Service. The Board rules and regulations were clearly relevant to that determination of Weichert's rights and duties as a selling broker.
We find persuasive, however, Weichert's contention that the proofs, including the Board rules and regulations, did not support any finding of tortious interference with prospective economic or business advantage. As the trial judge correctly stated in his jury instructions, it was McLaughlin's burden to establish that Weichert interfered with her efforts to make the sale by conduct which "went beyond or transgressed generally accepted standards of morality, that is, a violation of standards of socially acceptable conduct." See, e.g., Leslie Blau Co. v. Alfieri, 157 N.J. Super. 173 (App.Div. 1978), certif. den. 77 N.J. 510 (1978); Myers v. Arcadio, Inc., 73 N.J. Super. 493 (App.Div. 1962); Sustick v. Slatina, 48 N.J. Super. 134 (App.Div. 1957); Weinstein v. Clementsen, 20 N.J. Super. 367 (App.Div. 1952). The record here is barren of any showing of either interference or unconscionable conduct on the part of Weichert.
The proofs were uncontradicted that the Laskis had decided, for their own reasons and before they had any contact with Weichert, that they did not want to deal any longer with McLaughlin. It was also uncontradicted that the Laskis approached Geraldine Wilson, the Weichert representative, without any solicitation or inducement, and that they told Wilson that they had been shown the house by another broker, not then named, with whom they were dissatisfied and would no longer deal. The jury could, and perhaps did, disbelieve Wilson's testimony that she had "encouraged [Laski] to go back" to McLaughlin, but the proofs did not permit any inference that Wilson or any other Weichert representative had sought out the Laskis or induced them not to continue dealing through McLaughlin.
Thus while the record justifies the conclusion that Weichert's purpose was to advance its own interest and to earn the *68 commission itself, it does not show that Weichert used any subterfuge or other improper means.[4] The record shows only that Weichert dealt with buyers who presented themselves and asked for help. As Judge Bigelow observed in Weinstein v. Clementsen, supra, that is not tortious interference:
The plaintiff's postulate seems to be that the broker who first "finds" a potential customer and arouses his interest in the matter which the broker is promoting, acquires an exclusive right to develop that interest into an actual business transaction. Such is not the American law of free enterprise. One sows and another reaps. One insurance salesman convinces the prospect that more insurance is advisable, and another salesman  an old friend of the prospect  writes the policy. A well-conceived advertisement of one merchant, or an able salesman, almost makes the sale but the customer decides to "think it over," and next day buys the article from a competitor.
20 N.J. Super. at 374.
Although the record does not support a finding of tortious interference, it could support a finding of breach of contract. That is to say, on the proofs before it, the jury might have concluded that Weichert effected the sale to the Laskis through the Board multiple listing service and that McLaughlin would have earned the selling broker's commission if Weichert had referred the Laskis back to her as the Board rules and regulations require. The difficulty, of course, is that the record does not disclose whether the verdict was based on a finding of breach of contract or of tortious interference. We are thus constrained to reverse the judgment in its entirety and remand the matter for a new trial on the breach of contract cause of action alone. On the remand, Weichert may advance its contention, raised for the first time on this appeal, that the Board rules and regulations upon which McLaughlin relies constitute an unlawful restraint of trade or commerce and are thus *69 unenforceable under the New Jersey Antitrust Act, N.J.S.A. 56:9-1 et seq.
The judgment is reversed. The matter is remanded to the Law Division for further proceedings consistent with this opinion.
NOTES
[1] The claims against the remaining defendants were dismissed prior to or during trial.
[2] The total commission on the sale was $7500, of which $3750 was paid to defendant Richard L. Schlott Realtor, the listing broker; a $30 listing fee was paid by Weichert as selling broker.
[3] Weichert's answer admitted its membership in the Board. That admission was technically incorrect but surely suggests that Weichert regarded itself as enjoying the benefits of James Weichert's individual membership.
[4] Contrary to the trial judge's suggestion in his jury charge, the alleged breach of Board rules and regulations standing alone cannot support the claim of tortious interference. See Cappiello v. Ragen Precision Indus., Inc., 192 N.J. Super. 523, 529 (App.Div. 1984). Cf. New Mea Const. Corp. v. Harper, 203 N.J. Super. 486, 493-494 (App.Div. 1985).